475 S.E.2d 478

**Kristina Beth STEWART, Petitioner Below, Appellant,**

v.

**WEST VIRGINIA BOARD OF EXAMINERS FOR REGISTERED PROFESSIONAL NURSES, Respondent Below, Appellee.**

No. 23147.

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1996.

Decided July 15, 1996.

Joni S. Rundle, Rundle & Rundle, L.C., Pineville, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Alice R. Faucett–Carter, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

This case is before this Court upon an appeal from the final order of the Circuit Court of Wyoming County, West Virginia, entered on January 19, 1995. Pursuant to that order, the circuit court affirmed a decision of the West Virginia Board of Examiners for Registered Professional Nurses which suspended the probationary license of the appellant, Kristina Beth Stewart, to engage in the practice of registered professional nursing in West Virginia. The Board suspended the appellant's probationary license for five years, or for at least two years after all legal matters relating thereto have been settled, whichever is longer.

This Court has before it the petition for appeal, all matters of record, including a transcript of the administrative hearing conducted by the Board, and the briefs of counsel. For the reasons stated below, this Court affirms the final order of the circuit court.

I

In March 1994, the appellant submitted an application to the West Virginia Board of Examiners for Registered Professional Nurses for a license to practice registered professional nursing in West Virginia. As required by the Board, the appellant disclosed upon her application that she had been convicted in 1991 in the Circuit Court of Cabell County, West Virginia, of a felony offense concerning the delivery of a controlled substance. *W.Va.Code*, 60A–1–101, *et seq.* [1983]. In view of the disclosure, the Board and the appellant entered into a written consent agreement dated July 19, 1994, whereby the appellant was issued a probationary license to practice registered professional nursing. As the agreement provided, however, the license was issued upon various conditions. One of the conditions was that the appellant would not violate the provisions of *W.Va. Code*, 30–7–1, *et seq.* [1992], concerning the licensing requirements for the practice of registered professional nursing. Another condition was that the appellant would submit to unannounced drug-screen tests. With regard to the latter condition, the consent agreement stated: "Receipt of a positive drug screen is deemed to be a violation of this agreement, and shall result in immediate suspension of Stewart's probationary license."

On August 23, 1994, an employee of the Board monitoring probationary licenses directed the appellant to take a drug-screen test. Accordingly, a urine sample was received from the appellant that day by Mary Lou Griffith, a nurse employed by Doctor's Immedicare, Inc., of Beckley, West Virginia. The sample was then sent by Ms. Griffith to Roche Biomedical Laboratories in North Carolina for testing. As the hearing examiner for the Board stated, Roche Biomedical Laboratories found that the sample tested "positive for cocaine use."

Thereafter, on August 30, 1994, the West Virginia Board of Examiners for Registered Professional Nurses notified the appellant by telephone and in writing that, as a result of the drug-screen test, the appellant's probationary license was suspended. At that time, the appellant was also notified, in writing, that an administrative hearing would be conducted in the matter on September 6, 1994.

At the September 6 hearing, the Board adduced testimony from witnesses concerning the consent agreement and the result of the drug-screen test. In particular, exhibit no. 2 of the Board, admitted into evidence, was a laboratory report from Roche Biomedical Laboratories indicating that the sample taken from the appellant had tested positive for cocaine use. On the other hand, the appellant, who appeared at the hearing *pro se*, asserted that the Board had not established a proper chain of custody concerning the transfer of the urine sample from Doctor's Immedicare, Inc. to Roche Biomedical Laboratories and that, in any event, the drug-screen test was invalid because of several medications the appellant had taken with regard to her hospitalization on August 6, 1994, through August 9, 1994, for an ankle

injury. In addition, the appellant submitted an independent drug-screen test from Southern West Virginia Clinic of Beckley, West Virginia, dated August 31, 1994, finding no presence of cocaine.

Following the hearing, the hearing examiner submitted a recommended decision to the Board containing findings of fact and conclusions of law. In particular, the hearing examiner found "no breaches of protocol" concerning the transfer or testing of the urine sample. Furthermore, the hearing examiner found that the appellant had, in fact, tested positive for cocaine use and that such use constituted a breach of the consent agreement between the Board and the appellant.

On October 12, 1994, the recommended decision of the hearing examiner was adopted by the West Virginia Board of Examiners for Registered Professional Nurses, and the probationary license of the appellant was suspended for five years, or for at least two years after all legal matters relating thereto have been settled, whichever is longer. On January 19, 1995, the circuit court determined, *inter alia*, that the ruling of the Board was not "unsupported by substantial evidence" and affirmed the suspension. This appeal followed.

## II

Chapter 30 of the *West Virginia Code* is entitled "Professions and Occupations," and article 7 thereof provides for the licensing of registered professional nurses. As expressed in *W.Va.Code*, 30–7–2 [1994], the purpose of the license requirement is to safeguard the "life and health" of the public. Pursuant to *W.Va.Code*, 30–7–11 [1965], however, the West Virginia Board of Examiners for Registered Professional Nurses may revoke or suspend a license or otherwise discipline a licensee, if the licensee has been convicted of a felony or is addicted to the use of habit-forming drugs, or "[i]s guilty of conduct derogatory to the morals or standing of the profession of registered nursing[.]"

In this case, the Board has focused upon the latter provision concerning "conduct derogatory to the morals or standing of the profession." In *Code of State Rules*, 19–9–5.1.11 (1994), which details the Board's disciplinary authority, that phrase is interpreted to include, as misconduct, "failing to comply with terms and conditions as may be imposed by the board based upon previous disciplinary action of the board." According to the West Virginia Board of Examiners for Registered Professional Nurses, the appellant failed to comply with the terms and conditions of the July 19, 1994, consent agreement by testing positive for cocaine use, and, therefore, the Board had the power, under the above authorities, to suspend her probationary license.

Nevertheless, both chapter 30 of the *West Virginia Code* and *Code of State Rules*, 19–5–1, *et seq.* (1993), and 19–9–1, *et seq.*, (1994), provide that a licensee subject to disciplinary proceedings conducted by the West Virginia Board of Examiners for Registered Professional Nurses is entitled to notice of the transgression and an administrative hearing thereon. As *W.Va.Code*, 30–1–8(a) [1978], states: "Notwithstanding any other provision of law to the contrary, no certificate, license, registration or authority issued under the provisions of this chapter may be suspended or revoked without a prior hearing before the board or court issuing said certificate, license, registration or authority." *See W.Va. Code*, 30–7–16 [1965]. Specifically, as various references in *Code of State Rules*, 19–5–1, *et seq.*, (1993) make clear, disciplinary proceedings conducted by the Board concerning the practice of registered professional nursing are subject to the "contested cases" provisions of the State Administrative Procedures Act. *W.Va.Code*, 29A–5–1, *et seq.* [1964]. *See also Ruble v. Secretary of State*, 192 W.Va. 134, 137, 451 S.E.2d 435, 438 (1994); *Serian v. State Board of Optometry*, 171 W.Va. 114, 117, 297 S.E.2d 889, 892 (1982).

Judicial review of a decision of the West Virginia Board of Examiners for Registered Professional Nurses is authorized under both the provisions of the State Administrative Procedures Act and *W.Va.Code*, 30–1–9 [1931]. As *W.Va.Code*, 30–1–9 [1931], states: "The court or judge shall, without a jury, hear and determine the case upon the record of the proceedings before the board. The court or judge may enter an order affirming, revising, or reversing the decision of the

board if it appears that the decision was clearly wrong." This Court has associated the "clearly wrong" standard with the review of evidentiary findings,[1] whereas conclusions of law are subject to *de novo* scrutiny. Syl. pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994); syl. pt. 1, *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989).

As observed in syllabus point 1 of *Francis O. Day Co. v. Director of Environmental Protection*, 191 W.Va. 134, 443 S.E.2d 602 (1994): "Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." *See also* syl. pt. 3, *Ruby v. Insurance Commission of West Virginia*, 197 W.Va. 27, 475 S.E.2d 27 (1996). Moreover, as we recently held in syllabus point 3 of *In re: Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996): " 'The "clearly wrong" and the "arbitrary and capricious" standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis.' *Frymier–Halloran v. Paige*, 193 W.Va. 687, 695, 458 S.E.2d 780, 788 (1995)."

Here, the appellant asserts that the West Virginia Board of Examiners for Registered Professional Nurses did not establish a proper chain of custody concerning the transfer of the urine sample from Doctor's Immedicare, Inc., to Roche Biomedical Laboratories, where the sample was tested. The basis of that assertion was the insistence of the appellant at the administrative hearing that Mary Lou Griffith of Doctor's Immedicare, Inc., sent the sample to Roche with a torn sealing cap on the sample's container

and, in addition, that Ms. Griffith mistakenly identified the color of the label on the container as red, rather than white.

During the administrative hearing, however, Mary Lou Griffith testified that "chain of custody handling was performed" with regard to the urine sample received from the appellant. Moreover, she stated that there was nothing unusual concerning the collection of the sample and that she had no recollection of a tear in the sealing cap. Furthermore, as Ms. Griffith testified:

Q. Do you know, if you collected a specimen and sent it to Roche and the specimen was not intact, do you know if Roche would test the specimen?

A. Yeah. They would send it back if it was not properly done. They are all sent back if not properly done.

In the recommended decision, the hearing examiner stated that the testimony adduced at the administrative hearing "showed that there were no breaches of protocol concerning the submission of the body fluid specimen given by Ms. Stewart to Roche Laboratories." Moreover, the hearing examiner stated that "Roche Laboratories did not give any indication as to any irregularities with the specimen submitted by Stewart." In *State v. Dillon*, 191 W.Va. 648, 662, 447 S.E.2d 583, 597 (1994), this Court stated that "[a] trial court's decision on chain of custody will not be disturbed on appeal absent an abuse of discretion." *See also* syl. pt. 2, *State v. Davis*, 164 W.Va. 783, 266 S.E.2d 909 (1980); Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 10.3(C) (2nd ed.1986). In this case, no abuse of discretion appears in the conclusion of the hearing examiner that the chain of custody of the urine sample, leading to the laboratory report of

---

1. The association of the "clearly wrong" standard with the review of evidentiary findings is consistent with the provisions of *W.Va.Code*, 29A–5–4(g)(5) [1964], of the State Administrative Procedures Act. As *W.Va.Code*, 29A–5–4(g) [1964], provides:

   The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

   (1) In violation of constitutional or statutory provisions; or
   (2) In excess of the statutory authority or jurisdiction of the agency; or
   (3) Made upon unlawful procedures; or
   (4) Affected by other error of law; or
   (5) *Clearly wrong in view of the reliable, probative and substantial evidence on the whole record;* or
   (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
   (emphasis added).

Roche Biomedical Laboratories, was proper. That conclusion was based upon the hearing examiner's factual finding that no breaches of protocol occurred and that, in particular, Roche did not indicate irregularities with regard to the sample. Upon a review of the transcript of the administrative hearing and exhibits, we conclude that the hearing examiner's factual findings concerning chain of custody were supported by the evidence and, thus, not clearly wrong.

■ In addition, the appellant asserts that the August 23, 1994, drug-screen test was invalid because of several medications the appellant had taken earlier that month with regard to her hospitalization for an ankle injury. It should be noted that the appellant made that assertion during the administrative hearing but called no witnesses upon her behalf and did not offer any specific testimony or exhibits in that regard. The only evidence of a specific nature offered by the appellant was the drug-screen test performed by Southern West Virginia Clinic, taken by the appellant several days after the August 23, 1994 test, finding no presence of cocaine.

In response, the West Virginia Board of Examiners for Registered Professional Nurses called Laura Skidmore Rhodes, the Assistant Executive Secretary for the Board, who testified that a toxicologist told her that "a positive screen for cocaine would only come from cocaine" and that he was aware of no reactions of medications which could lead to an indication of cocaine. In conjunction with her above assertion at the administrative hearing, the appellant contends before this Court that the statements of the toxicologist constituted hearsay and should not have been considered by the hearing examiner.

Although *W.Va.Code*, 29A–5–2 [1964], of the State Administrative Procedures Act, provides that "[t]he rules of evidence as applied in civil cases in the circuit courts of this state shall be followed" in contested administrative cases, this Court has indicated that hearsay may be considered, under that statute, upon a limited basis.[2] As we stated in *Ours v. West Virginia Department of Motor Vehicles*, 173 W.Va. 376, 380, 315 S.E.2d 634, 639 (1984), "hearsay accident reports ... may not be the *sole* basis" for adverse administrative action (emphasis added). *See also Leitman v. McAusland*, 934 F.2d 46, 51 (4th Cir.1991), stating that hearsay may be considered at an administrative hearing but may not be the only basis for a decision; 1A M.J. *Administrative Law* § 12 (Michie 1993), stating that an adjudicative officer at an administrative hearing may consider hearsay; Alfred S. Neely, IV, *Administrative Law in West Virginia* § 5.30 (Michie 1982); 2 Am.Jur.2d *Administrative Law* § 348 (1994); 73A C.J.S. *Public Administrative Law and Procedure* § 130c. (1983).

In this case, a review of the testimony and exhibits demonstrates that the statements of the toxicologist, though hearsay and considered below, were adduced through the testimony of Ms. Rhodes in response to the unsupported assertion of the appellant that the drug-screen test was invalid because of the medications the appellant had taken with regard to her ankle injury. The record suggests that the appellant's assertion was speculative and that the hearsay statements of the toxicologist in response should be deprived of significance for that reason. Certainly, the primary evidence of the West Virginia Board of Examiners for Registered Professional Nurses was exhibit no. 2, the laboratory report from Roche, which was shown by the evidence to be reliable. The hearing examiner found that, based upon the report of Roche Biomedical Laboratories, the appellant tested positive for cocaine use. Moreover, the hearing examiner found that on August 23, 1994, the Board told the appellant that she could submit a letter from a physician concerning her medications, but

---

2. As *W.Va.Code*, 29A–5–2(a) [1964], provides:

In contested cases irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in civil cases in the circuit courts of this state shall be followed. When necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible thereunder may be admitted, except where precluded by stat-

ute, if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. Agencies shall be bound by the rules of privilege recognized by law. Objections to evidentiary offers shall be noted in the record. Any party to any such hearing may vouch the record as to any excluded testimony or other evidence.

the appellant failed to secure such a letter. A review of the record demonstrates that the hearing examiner's finding of cocaine use was not clearly wrong.

Upon all of the above, this Court is of the opinion that the recommended decision of the hearing examiner, adopted by the West Virginia Board of Examiners for Registered Professional Nurses, was supported by the evidence, and no error was committed by the circuit court in affirming the Board's decision.[3] Therefore, the final order of the Circuit Court of Wyoming County, entered on January 19, 1995, is affirmed.

Affirmed.

---

**3.** In addition to the issues discussed above, the appellant raises a number of procedural challenges to the suspension of her probationary license by the West Virginia Board of Examiners for Registered Professional Nurses. In one such challenge, the appellant asserts that the August 30, 1994, notice of the administrative hearing scheduled for and held on September 6, 1994, violated the thirty-day notice requirement of *W.Va.Code*, 30–1–8(b) [1978]. As that statute provides:

> In all proceedings before a board or court for the suspension or revocation of any certificate, license, registration or authority issued under the provisions of this chapter, a statement of the charges against the holder thereof and a notice of the time and place of hearing

shall be served upon such person … at least thirty days prior to the hearing.

That challenge is without merit, however, in view of the express waiver agreed to by the appellant, as contained in the July 19, 1994, consent agreement. As the agreement states: "Stewart hereby waives the provisions of West Virginia Code, 30–1–8, or any other applicable statute, including but not limited to the Board's rules, requiring thirty (30) days notice prior to hearing." The record indicates that the appellant pursued the hearing process by declining to sign a new consent agreement tendered to her on August 30, 1994, for the voluntary surrender of her probationary license.

All other issues raised by the appellant are also without merit.