# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JARED SMITH,**
**Claimant Below, Petitioner**

**vs.) No. 23-ICA-113**        (JCN: 2021002789)

**ARCELORMITTAL,**
**Employer Below, Respondent**

**FILED**
**September 5, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jared Smith appeals the February 16, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent ArcelorMittal filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in affirming the claim administrator's decision to grant petitioner a 5% permanent partial disability ("PPD") award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 5, 2020, Mr. Smith suffered a workplace injury to his left hand when it was caught in a hydraulic press. Mr. Smith underwent two surgeries as a result of the injury, which included an irrigation and debridement of the wound, a left carpal tunnel release, an evacuation of the hematoma, and an exploration of the motor branch of the median nerve. Although not clear from the record, it appears that the claim administrator held the claim compensable for unspecified injury of the left wrist, hand, and fingers.

When the time came to assess Mr. Smith's permanent disability resulting from the work-related injury, he underwent an independent medical evaluation ("IME") performed by Victoria Langa, M.D., in July of 2021. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Langa found full active range of motion in Mr. Smith's left wrist and fingers and concluded that he received no impairment rating in that regard. Dr. Langa further found that Mr. Smith had no residual motor deficits and that his two-point discrimination was within normal

---

[1] Petitioner is represented by Christopher J. Wallace, Esq. Respondent is represented by Loren C. Allen, Esq., and Jeffrey B. Brannon, Esq.

1

limits at each of the fingertips, meaning there was no impairment. Dr. Langa did, however, find that Mr. Smith's hypertrophic, sensitive, palmar scar interfered with gripping activities and was sensitive to pressure, and assigned him 5% whole person impairment ("WPI"), which was her final recommendation. By order dated September 23, 2021, the claim administrator granted Mr. Smith a 5% PPD award in accordance with Dr. Langa's recommendation.

Mr. Smith underwent a second IME on December 2, 2021, which was performed by Bruce Guberman, M.D. Unlike Dr. Langa, Dr. Guberman found left hand range of motion loss in Mr. Smith's fingers, reduced grip strength, reduced pinch strength, weakness, and mild loss of sensation to light touch. Using the *Guides*, Dr. Guberman assessed 10% upper extremity impairment ("UEI") for range of motion abnormalities in the fingers, 2% UEI for range of motion abnormalities in the left wrist, and 8% UEI for sensory loss in the distribution of the left median nerve. After combining the UEI, Dr. Guberman converted it to WPI, and was left with a total of 11% WPI. Dr. Guberman also found 4% WPI related to the scarring on Mr. Smith's palm which, when combined with the 11% impairment rating, reached a total of 15% WPI.

Mr. Smith underwent a third IME on November 2, 2022, which was performed by Chuan Fang Jin, M.D. Dr. Jin found no ratable impairment for range of motion abnormalities in the fingers of the left hand or wrist. Dr. Jin also found no ratable impairment for sensory loss in the left median nerve, noting that Mr. Smith's two-point discrimination was within normal limits. Like Dr. Langa, Dr. Jin assessed Mr. Smith with 5% WPI due to scarring of the left palm.

Dr. Jin also critiqued Dr. Guberman's report. Regarding Dr. Guberman's range of motion testing, Dr. Jin noted that patient effort can account for differences among reports and pointed out that her range of motion measurements were normal, as were those of Dr. Langa. She also noted that Mr. Smith's physical therapy notes dated March of 2021 indicated that Mr. Smith could make a fist which, while not an exact reading for range of motion, does indicate good range of motion. Dr. Jin also contested Dr. Guberman's sensory impairment rating, noting that Mr. Smith did not report persistent sensory abnormalities and that he had completely normal two-point discrimination, which indicated no significant sensory deficits. Dr. Jin concluded "there is insufficient medical evidence to support [the] permanent impairment rating by Dr. Bruce Guberman that is excessive and exaggerated for the injury of this claim."

By order dated February 16, 2023, the Board affirmed the claim administrator's order granting Mr. Smith a 5% PPD award in accordance with Dr. Langa's recommendation. The Board found that all three evaluating physicians found similar impairments for Mr. Smith's scarring in his left palm. However, Dr. Guberman was the only physician to find impairment for range of motion abnormalities and sensory loss. In contrast, Dr. Langa and Dr. Jin similarly found no range of motion abnormalities, and both

2

noted no apparent sensory deficits, as Mr. Smith's two-point discrimination was within normal limits. As such, the Board found that Dr. Guberman's report was less persuasive than the reports of Drs. Langa and Jin, and further found that the weight of the evidence established that Mr. Smith sustained 5% WPI as a result of his compensable injury. Mr. Smith now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Smith argues that the Board simply decided the case based on a "most reports win" basis. Mr. Smith alleges that this will result in a claimant never winning because the claim administrator "gets the first choice of an independent medical evaluator" and a claimant "can get, at most, two medical evaluations regarding impairment."[2] Mr. Smith argues that, rather than looking at the number of reports, the Board should have

---

[2] Mr. Smith's assertions regarding the number of IMEs a claimant can obtain are based on an assumption that most claimants have limited resources to afford multiple medical evaluations, whereas employers can better afford additional evaluations. We acknowledge Mr. Smith's argument that claimants often cannot afford to pay for multiple IMEs. However, claimants are not restricted to supporting their case with only IMEs. Rather, they can submit existing records from their treatment providers or physical therapists that provide relevant, contemporary (close in time to having reached maximum medical improvement) information regarding their injury and resulting complaints, such as range of motion or sensory loss issues, which can be used to corroborate or rebut IMEs presented by the employer.

looked at the quality of the medical evidence. Mr. Smith states he suffered a crushing and degloving injury to his hand, which required two surgeries and changing to a sedentary job after he was released to return to work. He claims that he reported complaints of numbness, discomfort, and loss of strength and that only Dr. Guberman accounted for these complaints in his report. As such, he claims that the evidence supports an impairment rating greater than 5%. Mr. Smith further argues that the Board never found that Dr. Guberman's evaluation was not done in accordance with the *Guides* and that, if Dr. Guberman's report "is the highest and is reliable," then the Board should have awarded Mr. Smith a PPD award in accordance with Dr. Guberman's recommendation. In sum, Mr. Smith contends that the Board's decision came down to the fact that two reports recommended 5% impairment and one recommended 15% impairment, and that it clearly erred in awarding Mr. Smith a 5% PPD award based on the number of reports alone. We disagree.

Upon review, we find that Mr. Smith failed to demonstrate that the Board's findings and conclusions were clearly wrong. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 2, *Stewart v. W. Va. Bd. of Exam'rs for Registered Pro. Nurses*, 197 W. Va. 386, 475 S.E.2d 478 (1996) (per curiam) (citations omitted). With this high standard of review in mind, we cannot conclude that the Board erred in granting Mr. Smith a 5% PPD award, which was well supported by the opinions of Drs. Langa and Jin.

Mr. Smith attempts to characterize the Board's decision as purely based on numbers; however, his arguments fall short of demonstrating error. Here, the Board found that Dr. Guberman's recommendation was less persuasive than the reports of Drs. Langa and Jin. While the evaluating physicians agreed as to the impairment for Mr. Smith's scarring, Dr. Guberman's findings for range of motion and sensory deficits were against the weight of the evidence. Both Dr. Langa and Dr. Jin found no impairment for these issues.

Although Mr. Smith states that Drs. Jin and Langa failed to account for his complaints of numbness, Dr. Jin clearly addressed Mr. Smith's complaints and found that they were not indicative of a sensory issue given that he felt only momentary numbness on occasion in one or two fingers. Additionally, Dr. Jin found that Mr. Smith's two-point discrimination was within normal limits, further demonstrating no sensory impairment. Regarding range of motion, Dr. Jin noted that patient effort can account for such extreme differences in testing. Mr. Smith's range of motion and sensory testing were within normal limits for both Dr. Langa and Dr. Jin, which was also corroborated by physical therapy notes indicating that Mr. Smith could make a fist. As noted by Dr. Jin, while making a fist is not the standard for determining range of motion, it can be an indicator of good range of motion in addition to range of motion testing. Given the substantial evidence before us, we conclude that the Board did not clearly err in granting the 5% PPD award, and Mr. Smith is entitled to no relief in this regard.

4

Accordingly, we affirm.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

5